# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**United States of America,**

      **Plaintiff,**

**v.**                                                                                          Case No. 10-20037-01-JWL

**Don Milton Steele,**

      **Defendant.**

## MEMORANDUM & ORDER

In July 2011, a jury convicted defendant Don Steele of numerous drug, forgery and counterfeiting charges as well as possessing a firearm in furtherance of a drug trafficking crime. Ultimately, the court sentenced Mr. Steele to a total term of 300 months imprisonment. This sentence included two concurrent mandatory minimum terms of 20 years which the court imposed after finding that Mr. Steele had a qualifying prior felony drug conviction for purposes of imposing an enhanced sentence under 21 U.S.C. § 841(b). The sentence also included a mandatory consecutive term of 60 months on the firearm charge. The Tenth Circuit affirmed Mr. Steele's conviction and the enhancement of his sentence. *United States v. Dyke*, 718 F.3d 1282 (10th Cir. 2013). The court later denied Mr. Steele's 28 U.S.C. § 2255 motion and the Circuit denied Mr. Steele a certificate of appealability.

This matter is now before the court on defendant's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) (doc. 503). The Tenth Circuit has endorsed a three-step test for district courts to utilize in connection with motions filed under § 3582(c)(1)(A). *United States v. McGee*, 992 F.3d 1035, 1042-43 (10th Cir. 2021) (citing *United States v. Jones*, 980 F.3d 1098,

1107 (6th Cir. 2020)). Under that test, a court may reduce a sentence if the defendant administratively exhausts his or her claim and three other requirements are met: (1) "extraordinary and compelling" reasons warrant a reduction; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the reduction is consistent with any applicable factors set forth in 18 U.S.C. § 3553(a). *Id*. at 1042.[1] A court may deny compassionate-release motions when any of the three prerequisites is lacking and need not address the others. *Id*. at 1043. But when a district court grants a motion for compassionate release, it must address all three steps. *Id*.

As will be explained, the court grants the motion and reduces defendant's sentence to time served.[2]

*Extraordinary and Compelling Reasons*

In his motion, defendant contends that compassionate release is warranted based on a combination of circumstances unique to defendant, including the fact that defendant would no longer be subject to a mandatory minimum 20-year sentence; his age and health concerns; his rehabilitative efforts and clean disciplinary record while in BOP custody; his strong family support; and the continued threat of COVID-19 at Springfield MCFP, where defendant is in custody. Rather than looking at defendant's circumstances as a whole, the government contends that none of the issues raised by defendant is sufficient to warrant a reduction under the statute.

---

[1] The government concedes that defendant has exhausted his administrative remedies.
[2] Defendant's release plan has been verified and approved by the United States Probation Office.

As will be explained, the court finds that defendant's circumstances, taken together, constitute extraordinary and compelling reasons sufficient to warrant a reduction to time served.

The court begins with defendant's mandatory minimum 20-year sentence. Defendant's sentence was enhanced under 21 U.S.C. § 851 because he had a prior felony drug offense. That prior offense was a 1995 Kansas state conviction for conspiracy to sell cocaine. Defendant received a sentence of two years' probation for the offense, with a suspended term of two years' imprisonment. His probation was not revoked, he never served any term of imprisonment for the conviction, and his conviction was later expunged. Under the new benchmark for § 851 enhancements, this offense would not qualify as a "serious drug felony" because he served no time in prison, much less the minimum twelve months now required by statute. *See United States v. Nichols*, 2020 WL 6134467, at *4 (D. Kan. Oct. 19, 2020) (citing 21 U.S.C. §§ 802(57), 841(b)(1)(A); *United States v. Day*, 474 F. Supp. 3d 790, 795-96 (E.D. Va. July 23, 2020) (explaining that First Step Act changed what qualifies as a § 851 predicate offense to a "serious drug felony," defined as an offense for which an offender actually served a term of imprisonment of more than one year, instead of an offense that is punishable by imprisonment of more than one year)).

Today, defendant would face only the 10-year mandatory minimum under § 841(b)(1)(A)(viii). Moreover, in the absence of the 20-year mandatory minimum, defendant would have been eligible for a two-level reduction under 18 U.S.C. § 3582(c)(2) and Amendment 782 to the Guidelines. That would put defendant at an advisory Guidelines range of 151-188 months for the drug convictions in this case. Taking the low end of that range, coupled with the 60-month consecutive sentence on the § 924(c) conviction, defendant would face a total sentence

3

of 211 months, instead of the 300-month sentence he received, if sentenced today for the same conduct.

The government's response to this argument is somewhat baffling. It asserts that defendant's mandatory minimum sentence "would not be eliminated but would simply be reduced to . . . 10 years" such that this "basis for relief must be rejected by the court." It wholly ignores that defendant's sentence would be much lower today. The government also argues that a retroactive sentencing change cannot be a basis for compassionate release. Of course, the Tenth Circuit has held that a district court can consider a retroactive sentencing change so long as other "unique circumstances" exist that, in combination, constitute extraordinary and compelling reasons for a reduction. The government, then, has not persuaded the court that this sentence disparity is not a compelling factor, with others discussed below, warranting a reduction. *See United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) (district court appropriately granted sentence reduction based on a combination of factors, including First Step Act's elimination of sentence-stacking under § 924(c) and defendant's young age at the time of sentencing); *McGee*, 992 F.3d at 1048 ("[O]nly . . . the combination of such a sentence and a defendant's unique circumstances . . . constitute 'extraordinary and compelling reasons' for purposes of § 3582(c)(1)(A)(i).").

Defendant's age (62) and his medical conditions are also a factor in the court's decision to reduce his sentence. Specifically, defendant asserts that he is experiencing early symptoms of dementia and the record reflects that his parents both suffered from Alzheimer's disease. His family members have confirmed behavior on the part of defendant that is consistent with signs of early dementia. While the government complains that dementia does not appear in defendant's

4

medical records, it is not surprising to the court that early symptoms would not necessarily be recorded by medical staff. The fact that both parents suffered from Alzheimer's disease, a disease with a strong genetic component, [https://www.alz.org/alzheimers-dementia/what-is-alzheimers/causes-and-risk-factors/genetics](https://www.alz.org/alzheimers-dementia/what-is-alzheimers/causes-and-risk-factors/genetics), increases the likelihood that defendant will develop the disease. The court, then, is persuaded that defendant has early signs of dementia. The record further reflects that defendant suffers from Ledderhose disease, which affects the ability to walk and causes pain in the feet, and Dupuytren's disease, which causes pain and disfigurement in the hands.

Another factor that supports a reduction in this case is defendant's rehabilitative efforts and his disciplinary record in BOP custody. The record reflects that defendant has used his time while incarcerated to prepare for release back into the community. He works as an orderly at Springfield MCFP; he has completed courses focused on reentry and release planning; and he has completed courses in rental properties among various other subjects.[3] While the government does not challenge the specifics of defendant's efforts at rehabilitation, the government argues that defendant "has amassed a significant Disciplinary Record" in the BOP and that his "two-page prison disciplinary record belies a significant rehabilitative effort." This argument is disingenuous. He has no recent disciplinary incidents in BOP custody. His last disciplinary incident was in 2013 for possessing stolen property; he has never been accused of any violence in prison or possession of drugs or alcohol. *See United States v. Muhammad*, 2021 WL 2650341, at *4 (E.D. Tenn. June 28, 2021) (granting request for compassionate release in part because

---

[3] Part of defendant's release plan includes working for his brother's company as an Assistant Property Manager for residential rental properties.

5

defendant took advantage of rehabilitative programming and had no sanctions for violent conduct or drugs or alcohol). The disciplinary record reflects a total of eight incidents occurring between November 2012 and November 2013 and include write-ups for "being untidy" and conducting a business without authorization. None of these incidents from 8 years ago cuts against his rehabilitative efforts.

The court is also persuaded that a reduction is appropriate in part because of the strong family support that defendant will experience upon release. The record includes letters from defendant's brother and his three adult children, who are all eager to assist defendant as he transitions back to his community. His brother will provide a stable home for defendant, as verified by the Probation Office, as well as stable employment. In fact, defendant's brother asserts that employment (and reliable transportation) is waiting for defendant as soon as he is released.

Lastly, defendant's age and his health likely place him at some increased risk for severe illness or complications if he were to contract COVID-19. The record does not indicate that defendant has been vaccinated but also does not indicate whether (and, if so, why) he refused a vaccine. While the vaccination rates at Springfield MCFP are improving each day and the threat of COVID-19 is certainly reduced, emerging variants and potential vaccine hesitancy are concerns. *See id.* at *3 (despite fact that inmate's chance of contracting disease was reduced in light of vaccine availability, variants and vaccine hesitancy, coupled with positive cases at facility, rendered pandemic a grave concern). The CDC lists dementia as a condition that can increase the risk of several illness from COVID-19. *See* CDC, Coronavirus Disease 2019 (COVID-19): *People of Any Age with Underlying Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed June 30, 2021).

6

In sum, the court is persuaded that the combination of circumstances described above amount to extraordinary and compelling reasons that warrant a reduction in defendant's sentence.

*Applicable Policy Statements*

The Sentencing Commission's most recent policy statement regarding sentencing reductions under § 3582(c)(1) is set forth in U.S.S.G. § 1B1.13. The policy statement expressly applies to motions filed by the Director of the BOP and was promulgated before the enactment of the First Step Act and, thus, before Congress authorized defendants to file their own motions. *McGee*, 992 F.3d at 1049 ("Although Congress's enactment of the First Step Act and its amendment of § 3582(c)(1) should have prompted the Sentencing Commission to revise the policy statement set forth in § 1B1.13, the Sentencing Commission has, to date, been unable to do so."). The Tenth Circuit has concluded, then, that the policy statement is applicable only to motions for sentence reductions filed by the Director of the BOP, and not to motions filed directly by defendants. *Id.* at 1050. In this case, defendant—not the BOP—filed his motion for compassionate release. Thus, the existing policy statement is not applicable to the motion and the court's discretion to consider whether any reasons are extraordinary and compelling is not constrained by § 1B1.13 or the Application Note to that policy statement. *Id.*[4]

---

[4] Despite purporting to acknowledge this holding of *McGee*, the government devotes more than 3 pages of its response to its argument that "while courts may disagree on the reach of Section 1B1.13," a certain family circumstance mentioned by defendant in his initial pro se motion for compassionate release (but clearly abandoned by defendant in subsequent briefing) clearly does not fall within the contours of § 1B1.13. This argument is especially disappointing because the government, in another case, requested a 30-day extension to process the Circuit's opinion in *McGee*.

*Section 3553(a) Factors*

Lastly, the court finds that a sentence reduction to time served is an appropriate § 3553(a) sentence. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring the consideration of applicable § 3553(a) factors if court finds that extraordinary and compelling reasons warrant reduction). The § 3553(a) factors include (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a)(1)–(6). Applying those factors here, the court reduces defendant's sentence to time served.

As noted earlier, defendant would face a sentence of 211 months today in light of legislative changes and Amendment 782. That sentence, then, is the sentence that Congress and the Sentencing Commission have determined would be consistent with public safety and the need to provide just punishment, promote respect for the law and reflect the seriousness of his offenses. And while defendant has not served the full length of 211 months at this point, the record reflects that he has served a sufficient amount of time. Notably, defendant was assigned a criminal history category of 1—with a single criminal history point for the 1995 prior drug conviction that was ultimately expunged and a 2003 battery conviction for which he also received probation. This case marks defendant's first sentence of imprisonment and he received a mandatory 25-year

sentence. The court also emphasizes the lack of violence in defendant's criminal history and his demonstrated rehabilitation and good conduct while in BOP custody.

In deciding to reduce defendant's sentence to time served, thereby deciding that the time that defendant has served is sufficient to provide just punishment relative to the nature and seriousness of his offenses, the court is also struck by the highly unique factual and legal issues in this case—a case in which defendant asserted a viable entrapment defense to the jury in light of certain government conduct relating to the underlying crimes. As described by the prosecutor assigned to this case during sentencing, defendant is, in a word, a "scoundrel." But he has served nearly 12 years for operating his "small time criminal ring," *United States v. Dyke*, 718 F.3d 1282, 1284 (10th Cir. 2013), and the court is persuaded that those years are sufficient to serve the goals of incapacitation, deterrence, retribution, and rehabilitation.

In summary, the court concludes in its discretion that extraordinary and compelling reasons warrant the reduction of the defendant's sentence to time served pursuant to Section 3582(c)(1)(A), and the defendant's motion is hereby granted.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) (doc. 503) is granted and the court reduces defendant's sentence to time served.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant's term of supervised release will begin immediately upon his release from the Bureau of Prisons. All previously imposed terms and conditions of defendant's supervised release shall remain in effect.

**IT IS SO ORDERED.**

Dated this 1st day of July, 2021, at Kansas City, Kansas.

                                        *s/ John W. Lungstrum*
                                        John W. Lungstrum
                                        United States District Judge